IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JeJauncey Fernando Harrington, | ) | Case No. 4:19-cv-00689-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Director Patricia Ray and Sheriff Tony Chavis, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Defendants' motion to dismiss or, in the alternative, for summary judgment. ECF No. 35. Plaintiff filed a response in opposition.[1] ECF Nos. 47. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), (D.S.C.), this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings and a Report and Recommendation ("Report"). On October 18, 2019, the Magistrate Judge issued a Report recommending that Defendants' motion be considered as a motion for summary judgment and that it be granted because Plaintiff failed to exhaust his administrative remedies. ECF No. 52. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections, and Defendants filed a reply. ECF Nos. 55, 57.

---

[1] Defendants filed a motion for extension of time to file a reply. ECF No. 50. It has not previously been ruled on and is now moot.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. See *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. See *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## DISCUSSION

In the present action, Plaintiff alleges that he is being retaliated against in violation of the First Amendment for filing a previous lawsuit and grievances. As stated above, the Magistrate Judge recommends that summary judgment be granted because Plaintiff failed to exhaust his administrative remedies. Plaintiff objects and argues that he has

filed several grievances that Defendants failed to provide to the Court. The Court has reviewed the record, the applicable law, and the Report de novo.[2]

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law.[3] *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted,

---

[2] Plaintiff argues that that Magistrate Judge is biased against him. ECF No. 55 at 1. To the extent he requests recusal of Judge Rogers, the Magistrate Judge will issue a text order addressing that issue shortly.

[3] Pretrial detainees are also subject to the exhaustion requirements of the PLRA. *See Allen v. Lutz*, No. CV 9:18-2542-HMH-BM, 2019 WL 117314, at *2 (D.S.C. Jan. 7, 2019) ("Allen was required to exhaust any available administrative remedies at GCDC in order to maintain the instant suit." (citing *Rutland v. Dewitt*, C.A. No. 8:09-13-SB, 2010 WL 288217, at *5 (D.S.C. Jan. 25, 2010) (unpublished) ("The exhaustion of administrative remedies is also required of pretrial detainees[.]"); *Tate v. Anderson*, C.A. No. 8:05-3085-HMH-BHH, 2007 WL 28982, at *4 (D.S.C. Jan. 3, 2007) (unpublished) ("[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees[.]"))).

"[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id.* at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016).

Defendants have provided an affidavit by Director Ray in which she outlines the grievance procedure at Darlington County Detention Center ("DCDC") and a copy of the Inmate Guide. ECF No. 35-2. As summarized by the Magistrate Judge, the DCDC grievance procedure requires that detainees complete the following steps:

> The DCDC provides a kiosk system where inmates can both file grievances and order items from the commissary. A grievance must be submitted through the kiosk within 72 hours of the incident the inmate is grieving. The grievance will be sent to a Shift Sergeant for investigation and response. The Shift Sergeant is provided up to five working days to investigate and provide a response. If the Shift Sergeant

4

> deems the grievance valid or invalid, the inmate will be provided the response and reason for the decision. The Shift Sergeant will provide a plan of corrective action for those grievances deemed valid. If the inmate is unsatisfied with response of Shift Sergeant, he must appeal to the Lieutenant within two working days of receiving the response from the Shift Sergeant. The Lieutenant will have five working days to provide a written response to the grievance. If the inmate is unsatisfied with the response from the Lieutenant, he must appeal to the final level, Detention Center Director, within two working days. The Director is provided seven working days to respond to grievances. The decision of the Director is considered final and no further appeals will be allowed.

ECF No. 52 at 5–6.

Director Ray avers that, at of the date of her affidavit, Plaintiff has submitted 68 kiosk requests since November 9, 2017. ECF No. 35-2 at 3. Twenty-three of those he designated as grievances. *Id.* She states that "[a]ny detainee using the kiosk sytem, including Harrington, has the ability to direct his/her request to staff and/or grievance to the proper department/person. Harrington is familiar and knowledgeable regarding the kiosk/grievance process at DCDC and has utilized it many times." *Id.* She further avers that every detainee entering DCDC receives a written copy of the Darlington County Detention Center Inmate Handbook which includes a section on grievances. *Id.* at 2, 5.

The Court has thoroughly reviewed all of Plaintiff's grievances. *See* ECF No. 35-2 at 31–53. The first instance of alleged retaliation occurred on October 12–14, 2018, when he was placed on "no movement." Plaintiff first grievance after October 14, 2018, was filed on November 23, 2018. ECF No. 35-2 at 47. The grievances states, "When will we be receiving our weekend visits back full time. I am not allowed to go to B pod so I

can't benefit from good behavior so y not allow those of us not getting in trouble weekend visits?" *Id*. In this grievance, Plaintiff fails to raise any issue with respect to retaliation; even if he had raised retaliation, the grievance would be untimely by more than one month.

Plaintiff does not specifically object to the recommendation as to this claim other than to say that he is limited in his ability to file grievances because he has recreation twice each week for 30 minutes. ECF No. 55 at 3–4. Nothing in Plaintiff's objections explains why he waited more than one month to file a grievance that failed to allege that he was subjected to retaliation on October 12–14, 2018. Accordingly, Plaintiff's objections are overruled with respect to this claim.

The second instance of alleged retaliation occurred on January 8, 2019, when Plaintiff was placed on administrative lockdown for opening another inmate's flap. Plaintiff filed a series of grievances on February 11, 2019, which state the following: "If I am not on lockdown why do I only get 30 mins rec twice a week on admin lockdown days? Like I said I am being targeted by you and your staff," (ECF No. 35-2 at 44); "On 2-10-2019 127 while on rec opened 220s flap and gave him a broom then opened 125s flap. I am still on admin lockdown for opening a flap . . . over 30 days," (*id.* at 45); "PC is for people who fear for their life not admin lockdown. I only come out twice a week thats punishment," (*id.* at 51). These grievances are untimely.

In his objections, Plaintiff asserts that he filed a grievance on February 8, 2019. ECF No. 55 at 3. Even if the Court were to assume this was true, that grievance would

can't benefit from good behavior so y not allow those of us not getting in trouble weekend visits?" *Id*. In this grievance, Plaintiff fails to raise any issue with respect to retaliation; even if he had raised retaliation, the grievance would be untimely by more than one month.

Plaintiff does not specifically object to the recommendation as to this claim other than to say that he is limited in his ability to file grievances because he has recreation twice each week for 30 minutes. ECF No. 55 at 3–4. Nothing in Plaintiff's objections explains why he waited more than one month to file a grievance that failed to allege that he was subjected to retaliation on October 12–14, 2018. Accordingly, Plaintiff's objections are overruled with respect to this claim.

The second instance of alleged retaliation occurred on January 8, 2019, when Plaintiff was placed on administrative lockdown for opening another inmate's flap. Plaintiff filed a series of grievances on February 11, 2019, which state the following: "If I am not on lockdown why do I only get 30 mins rec twice a week on admin lockdown days? Like I said I am being targeted by you and your staff," (ECF No. 35-2 at 44); "On 2-10-2019 127 while on rec opened 220s flap and gave him a broom then opened 125s flap. I am still on admin lockdown for opening a flap . . . over 30 days," (*id.* at 45); "PC is for people who fear for their life not admin lockdown. I only come out twice a week thats punishment," (*id.* at 51). These grievances are untimely.

In his objections, Plaintiff asserts that he filed a grievance on February 8, 2019. ECF No. 55 at 3. Even if the Court were to assume this was true, that grievance would

can't benefit from good behavior so y not allow those of us not getting in trouble weekend visits?" *Id*. In this grievance, Plaintiff fails to raise any issue with respect to retaliation; even if he had raised retaliation, the grievance would be untimely by more than one month.

Plaintiff does not specifically object to the recommendation as to this claim other than to say that he is limited in his ability to file grievances because he has recreation twice each week for 30 minutes. ECF No. 55 at 3–4. Nothing in Plaintiff's objections explains why he waited more than one month to file a grievance that failed to allege that he was subjected to retaliation on October 12–14, 2018. Accordingly, Plaintiff's objections are overruled with respect to this claim.

The second instance of alleged retaliation occurred on January 8, 2019, when Plaintiff was placed on administrative lockdown for opening another inmate's flap. Plaintiff filed a series of grievances on February 11, 2019, which state the following: "If I am not on lockdown why do I only get 30 mins rec twice a week on admin lockdown days? Like I said I am being targeted by you and your staff," (ECF No. 35-2 at 44); "On 2-10-2019 127 while on rec opened 220s flap and gave him a broom then opened 125s flap. I am still on admin lockdown for opening a flap . . . over 30 days," (*id.* at 45); "PC is for people who fear for their life not admin lockdown. I only come out twice a week thats punishment," (*id.* at 51). These grievances are untimely.

In his objections, Plaintiff asserts that he filed a grievance on February 8, 2019. ECF No. 55 at 3. Even if the Court were to assume this was true, that grievance would

still be untimely by nearly one month.[4]  Plaintiff has provided no explanation as to why this grievance is untimely, and the Court finds that the administrative remedy was not unavailable. *See Ross*, 136 S. Ct. at 1859–60 (holding that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Accordingly, Plaintiff's objections are overruled.[5]

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment [35] is **GRANTED** and this action is **DISMISSED without prejudice**.[6]  Plaintiff's motions to

---

[4] In her affidavit, Director Ray acknowledges that Plaintiff has filed many other requests at the kiosk that he did not designate as grievances. ECF No. 35-2 at 3. To the extent Plaintiff is referring to one of those requests, he has failed to properly exhaust his administrative remedies.

[5] The court further notes Plaintiff's argument in his objections that he wrote letters to the Sheriff, the Chief of SLED, the governor, the Supreme Court, and a federal lawyer. ECF No. 55 at 2–3. Writing letters to these entities is not part of the grievance policy.

[6] As this recommendation for dismissal is based on failure to exhaust, the dismissal of this case should be without prejudice. *Cf. Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989); *see also Armstrong v. Scribner*, 350 F. App'x 186, 2009 WL 3497769 at * 1 9th Cir. Oct. 30, 2009).

compel [31, 32] are **FOUND as MOOT**.[7] Defendants' motion for extension of time [50] is **FOUND as MOOT**.

IT IS SO ORDERED.

                                                            s/ Donald C. Coggins, Jr.
                                                            United States District Judge

January 17, 2020
Spartanburg, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[7] In his objections, Plaintiff argues that he would be able to establish that he exhausted his administrative remedies if the Court granted his motions to compel. The Court has reviewed Plaintiff's motions and finds that any information related to whether Plaintiff has exhausted his administrative remedies has been produced as an attachment to the motion for summary judgment. *See* ECF No. 35-2 at 3 (affidavit of Director Ray stating that Plaintiff filed 23 grievances since November 9, 2017), 31–53 (23 grievances).